IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN DOE, | |
| Plaintiff, | |
| v. | Civil Action No. 21-1450-RGA |
| NEW CASTLE COUNTY, HERBERT F. COATES, in his individual capacity, and GARRETT C. KRATZER, in his individual capacity, | |
| Defendants. | |

<u>MEMORANDUM OPINION</u>

Lauren A. Cirrinicione, MURPHY & LANDON, Wilmington, DE; Patrick C. Gallagher, JACOBS & CRUMPLAR, P.A., Wilmington, DE,

     Attorneys for Plaintiff.

Mary A. Jacobson, Helene Episcopo, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, DE,

     Attorneys for Defendants.

June 3, 2022

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' Motion to Dismiss Plaintiff's Complaint.   (D.I. 12).   I have considered the parties' briefing.   (D.I. 13, 20, 21).

## I.      BACKGROUND[1]

Plaintiff John Doe ("Doe") was employed by New Castle County ("the County") as a Trades Helper in the Plant Operations/Treatment Division of the County's Department of Public Works ("DPW").   (D.I. 3 at ¶ 5).   When he started this position on October 21, 2019, his work consisted of "pull[ing] pumps out of the sewer system for repair."   (*Id.* at ¶¶ 16–17).   He immediately noticed various safety issues in the workshop, including: "(a) a tripod used to lower men down into the sewer system to retrieve pumps; (b) a lack of adequate fall protection gear; (c) lifting straps that were used beyond their useful life; and (d) homemade fittings/rings placed on oxygen tanks that were used by cranes to lift the tanks."   (*Id.* at ¶ 17).   He raised these safety concerns to many of his co-workers and supervisors, who simply told Doe that OSHA requirements do not apply to the County.   (*Id.* at ¶ 18).

Doe was later assigned to assist Herb Coates ("Coates"), a Pump Station Mechanic, in the airport shop.   (*Id.* at ¶¶ 18–19).   During this time, Coates repeatedly used an offensive term to refer to homosexual firefighters "around" Doe, who is a volunteer firefighter.[2]   (*Id.* at ¶ 22).   Doe reported Coates' offensive language to James O'Hara, the Facility Maintenance Supervisor, and Regis Yurich, the Chief of Facility Operations.   (*Id.* at ¶¶ 18, 22).   They responded only

---

[1]  I state the facts as alleged by Plaintiff and in the light most favorable to him.
[2]  Doe is a heterosexual male and is married to a woman.   (D.I. 3 at ¶ 1).   Based on Coates' comments and Kratzer's actions (discussed *infra*), Doe claims that they perceived him to be homosexual.   (*Id.* at ¶¶ 38, 72, 121).

that this was "just Herbie being Herbie."   (*Id.* at ¶ 22).   On December 12, 2019, Doe told

Coates about his various safety concerns around the shop.   (*Id.* at ¶ 19).   The exchange became

contentious, and Coates accused Doe of threatening him.   (*Id.*).   As a result of this incident,

Doe received a written disciplinary warning on December 19, 2019.   (*Id.* at ¶ 21).

Because of this disciplinary action, Doe was transferred the same day to work under

Garrett Kratzer ("Kratzer"), a mechanic in DPW.   (*Id.* at ¶ 23).   After Doe's transfer, "someone

at the County [asked Doe] if he was having any problems working with Kratzer."   (*Id.* at ¶ 24).

Kratzer frequently used offensive language around his co-workers.   (*Id.* at ¶¶ 25, 26).   For

example, Kratzer made inappropriate comments to a female instructor during a sexual

harassment seminar.   (*Id.* at ¶ 25(c)).   Kratzer told Doe that two individuals had assisted

Kratzer prior to Doe—"one of the men had asked to be transferred," and "the other man who

held the position hanged himself."   (*Id.* at ¶ 27).   Kratzer also told Doe that he had previously

been fired from a position with the City of New Castle due to his "personality disorder."   (*Id.* at

¶ 28).

Knowing that Doe was married to a Filipino woman, Kratzer made Asian slurs on at least

six occasions to Doe.   (*Id.* at ¶ 30).

While on a job site, Kratzer "caressed" Doe's arm.   (*Id.* at ¶ 32).   A week later, "Kratzer

grabbed [Doe]'s chest."   (*Id.* at ¶ 33).   A few weeks later, on January 14, 2020, Kratzer climbed

on Doe's back and "put his erect penis on [Doe]'s butt."   (*Id.* at ¶ 35).   Kratzer told Doe on

multiple subsequent occasions that he wanted to have sex with Doe.   (*Id.* at ¶ 36).   On January

24, 2020, while Doe and Kratzer were returning from a job site, Kratzer again made the same

sexually explicit comment to Doe.   (*Id.* at ¶ 37).

2

After the January 24, 2020 incident, Doe reported Kratzer's actions to the New Castle County Police Department.   (*Id.* at ¶ 39).   Doe never reported Kratzer's harassment to the County because he was previously disciplined after raising safety concerns to Coates.   (*Id.* at ¶¶ 32, 40).   Once the County was notified of Doe's police complaint, the County investigated and told Doe that they were "unable to substantiate the allegations."   (*Id.* at ¶ 46).

Doe did not return to work after January 24, 2020.   (*Id.* at ¶ 42).   He was placed on unpaid medical leave after providing the County with a medical note.   (*Id.* at ¶ 45).   The County "never offered for [Doe] to transfer to another department," and thus, if Doe returned to work in the same department, he would have had to see Kratzer daily.   (*Id.* at ¶ 47).   Doe's physician advised Doe not to return to work for the County based on his anxiety and post-traumatic stress disorder related to his employment.   (*Id.* at ¶ 48).   Based on this recommendation, Doe resigned effective June 2, 2020.   (*Id.* at ¶ 49).

On October 14, 2021, Doe filed this action against the County, Coates, and Kratzer. (*Id.*).   Doe's Complaint raises the following counts:

I.     Title VII Retaliation against the County;

II.    Hostile Work Environment (race and national origin) against the County;

III.   Hostile Work Environment (gender) against the County;

IV.    Hostile Work Environment (sex and sexual orientation) against the County;

V.     Constructive Discharge against the County;

VI.    Title VII Retaliation against the County;

VII.   Failure to Accommodate under the ADA against the County;

VIII.  First Amendment Retaliation (sexual harassment) against the County;

IX.    First Amendment Retaliation (safety concerns) against the County;

X.     Violation of the Delaware Whistleblowers' Protection Act against the County;

3

XI.     Substantive Due Process (sexual orientation) against Coates;

XII.    Equal Protection (sexual orientation) against Coates;

XIII.   Substantive Due Process (sexual orientation) against Kratzer; and

XIV.    Substantive Due Process (race and national origin) against Kratzer.

Defendants have moved to dismiss all fourteen counts.   (D.I. 12).   In his answering

brief, Doe withdrew Count VII with prejudice and Counts VIII and IX without prejudice.   (D.I.

20 at 2).   I will therefore grant the motion to dismiss with respect to Counts VII, VIII, and IX.   I

will address the remaining counts below.

## II.   LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim

showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).   Rule 12(b)(6) allows the

accused party to bring a motion to dismiss the claim for failing to meet this standard.   A Rule

12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint

as true and viewing them in the light most favorable to the complainant, a court concludes that

those allegations "could not raise a claim of entitlement to relief."   *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than

labels, conclusions, or a "formulaic recitation" of the claim elements.   *Id.* at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The facial plausibility standard is satisfied when

the complaint's factual content "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III.  DISCUSSION

### A.  Retaliation Claims (Counts I and VI)

To state a claim for retaliation under Title VII, a plaintiff must allege that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (citation omitted).

Count I of the Complaint alleges that the County retaliated against Doe by reassigning him to work with Kratzer after Doe reported Coates' sexually offensive comments.  (D.I. 3 at ¶ 52).  The County argues that Count I should be dismissed because Doe fails to allege an "adverse employment action."  (D.I. 13 at 5–6).

An adverse action for retaliation is not limited to actions that affect a plaintiff's employment status.  S*ee Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–64 (2006) ("[T]he antiretaliation provision, unlike the [antidiscrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").  Retaliation simply requires that a "reasonable employee would have found the challenged action materially adverse . . . mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citation and quotation marks omitted).

Doe alleges that the County "knew that Kratzer was difficult to work with and would make [Doe]'s working conditions miserable."  (D.I. 3 at ¶ 53).  For instance, Kratzer openly

5

used offensive language in front of his colleagues, and his first two assistants had left the position.   (*Id.* at ¶¶ 25–28).   I find that Doe has plausibly alleged that his transfer to work under Kratzer, who was known to be difficult, was an adverse employment action.   *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999) (holding that a teacher had suffered an adverse employment action when he was transferred to a different school and required "to teach what he regarded as less desirable science classes"); *Sims v. Peace of Mind Living Habilitative Servs., LLC*, 2021 WL 5629974, at *11 (W.D. Pa. Dec. 1, 2021) (holding that the plaintiff's transfer from one set of clients to a more difficult set of clients was an adverse employment action).

The County also argues that Doe fails to allege facts supporting a causal connection between the protected activity and the adverse action.   (D.I. 13 at 6).   "A causal link between protected activity and adverse action may be inferred from an unusually suggestive temporal proximity between the two, an intervening pattern of antagonism following the protected conduct, or the proffered evidence examined as a whole."   *Phifer v. Sevenson Env't Servs., Inc.*, 2012 WL 868692, at *7 (D. Del. Mar. 14, 2012) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)), *aff'd*, 619 F. App'x 153 (3d Cir. 2015).

Doe alleges, "In hindsight, [Doe] may have been paired with Kratzer in retaliation for raising safety concerns and/or raising concerns about being called" a sexually offensive term. (D.I. 3 at ¶ 23).   This conclusory allegation is insufficient to state a causal connection.   Further, there are no allegations to demonstrate an "unusually suggestive temporal proximity" between the protected activity and the adverse action.   The Complaint merely alleges that Doe reported Coates' offensive language on an unspecified date, so the temporal relationship is vague.   (*Id.* at ¶ 22).   The Complaint instead provides a non-actionable reason that is more suggestive of the transfer.   Doe was transferred the same day that he was disciplined after raising safety concerns

6

to Coates.   (*Id.* at ¶¶ 21, 23).   Because Doe has failed to allege a causal link between the protected activity and adverse action, I will grant the motion to dismiss Count I without prejudice.

Count VI alleges that the County retaliated against Doe for reporting Kratzer's sexual harassment when "[t]he County did not offer a transfer of position to [Doe] and instead insisted that he must remain with his harasser."   (*Id.* at ¶ 87).   The County argues that its failure to offer a transfer is not an adverse action under Title VII.   (D.I. 13 at 6–7).   Doe responds that courts in this district have held that an employer's failure to transfer an employee can be an adverse action.   (D.I. 20 at 11).   But the cases cited by Doe involved denials of requested transfers. *See, e.g.*, *Parker v. State of Del., Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 478–79 (D. Del. 1998).   That is not the case here.   There are no allegations that Doe requested a transfer. Instead, the Complaint alleges that Doe did not return to work after January 24, 2020, based on the recommendation of his physician.   (D.I. 3 at ¶¶ 42–43).   The County's failure to unilaterally offer Doe a transfer out of the division is not an adverse action.   Thus, I will dismiss Count VI without prejudice.

## B.   Hostile Work Environment Claims (Counts II, III, and IV)

To state a claim for hostile work environment under Title VII, a plaintiff must allege that: (1) he suffered intentional discrimination because of his protected characteristic, (2) "the discrimination was severe or pervasive," (3) he was detrimentally affected by the discrimination, (4) "the discrimination would detrimentally affect a reasonable person in like circumstances," and (5) "the existence of *respondeat superior* liability."   *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Count II is based upon Kratzer's harassment relating to the race and national origin of Doe's wife.   (D.I. 3 at ¶¶ 57–61).   Counts III and IV are based upon Kratzer's harassment because of Doe's gender, sex, and perceived sexual orientation.   (*Id.* at ¶¶ 65–68, 72–75).

The County argues that Counts II, III, and IV should be dismissed because Doe cannot demonstrate *respondeat superior* liability.   (D.I. 13 at 12–13).   The basis for an employer's liability depends on whether the harasser was the plaintiff's supervisor or a non-supervisory co-worker.   *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). If the harasser is the victim's supervisor, then the employer may be strictly liable if the harassment "culminates in a tangible employment action."   *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).   Doe has failed to allege that Kratzer was his supervisor, so this Court instead applies the standard for employer liability for a non-supervisory co-worker's harassment.

"When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable."   *Huston*, 568 F.3d at 104.   "Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."   *Id.*   In other words, "an employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment."   *Id.* at 104–05.

Doe did not report Kratzer's harassment to the County.   (D.I. 3 at ¶¶ 32, 33, 35, 40). Doe argues that the County knew or should have known that Kratzer would harass and terrorize Doe because: (1) "Kratzer had been through a number of assistants/helpers before Doe, one of whom reportedly committed suicide and one of whom was transferred"; (2) "Kratzer had been

8

terminated from a previous position with the City of New Castle"; (3) after Doe's transfer, a

County employee asked Doe whether he was having any problems with Kratzer; (4) Kratzer

openly used offensive language in front of his co-workers; and (5) Kratzer made inappropriate

comments to a female instructor at a sexual harassment seminar in front of his co-workers.   (D.I.

20 at 8–9).   None of these actions, however, are specific to Doe and the racial and sexual

harassment here.   While these allegations support the inference that the County knew Kratzer

was a difficult and unpleasant person to work with, they do not support an inference that the

County knew that Kratzer was sexually and racially harassing Doe.   Thus, Doe has failed to

allege a basis for employer liability.   I will grant the motion to dismiss Counts II, III, and IV

without prejudice.[3]

### C.      Constructive Discharge Claim (Count V)

A claim for constructive discharge exists when "the employer knowingly permitted

conditions of discrimination in employment so intolerable that a reasonable person subject to

them would resign."   *Mandel*, 706 F.3d at 169 (citation omitted).   "To prove constructive

discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than

---

[3]  The County also argues that Counts III and IV should be dismissed because Doe has failed to allege facts establishing that the discrimination was based on his gender and sex.   (D.I. 13 at 13–14).   Although I have dismissed Counts III and IV on other grounds, I do find that Doe has plausibly alleged that Kratzer's repeated sexual advances were sex-based.   *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148 (3d Cir. 1999) ("We generally presume that sexual advances . . . are sex-based, whether the motivation is desire or hatred."); *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 n.3 (3d Cir. 1990) ("The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course."), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, *as recognized in Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 (3d Cir. 2017).

the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (citation omitted).

The County only seeks dismissal of Doe's constructive discharge claim under the so-called *Faragher-Ellerth* affirmative defense.   (*See* D.I. 13 at 16–17; D.I. 20 at 12–13).   To establish this defense, an employer must show: "(1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail [himself] of that employer-provided preventive or remedial apparatus." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004).

An affirmative defense may not be used to dismiss a complaint under Rule 12(b)(6) unless that defense appears on the face of the complaint.   *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citation omitted).   The *Faragher-Ellerth* defense does not appear on the face of Doe's Complaint.   There are no allegations regarding the County's policy for reporting sexual harassment and there are unresolved factual disputes regarding the reasonableness of Doe's decision not to report Kratzer's harassment.   *See, e.g.*, *Minarsky v. Susquehanna Cnty.*, 2016 WL 164307, at *5 (M.D. Pa. Jan. 13, 2016) ("What the County knew, when it knew it, and what it did in response, as well as what Plaintiff did or did not do and why, are key factual elements of the *Faragher-Ellerth* defense.").   I therefore deny the County's motion to dismiss Count V.

### D.    Claim Under Delaware Whistleblowers' Protection Act (Count X)

Under the Delaware Whistleblowers' Protection Act ("DWPA"):

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment: . . . [b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur . . . .

10

DEL. CODE ANN. tit. 19, § 1703(4).   To state a claim under the DWPA, Doe must allege that:

"(1) [he] engaged in a protected whistleblowing activity; (2) the accused official knew of the

protected activity; (3) [Doe] suffered an adverse employment action; and (4) there is a causal

connection between the whistleblowing activity and the adverse action."   *Chance v. Kraft Heinz*

*Foods Co.*, 2018 WL 6655670, at *10 (Del. Super. Ct. Dec. 17, 2018).

   The County argues that Doe has failed to allege an "adverse employment action."   (D.I.

13 at 18).   Doe argues that his transfer to work with Kratzer after Doe reported safety violations

to Coates and Coates' superiors is an adverse employment action under the DWPA.   (D.I. 20 at

14; *see also* D.I. 3 at ¶ 118).   DWPA prohibits employers from "discharg[ing], threaten[ing], or

otherwise discriminat[ing] against an employee regarding the employee's compensation, terms,

conditions, location, or privileges of employment."[4]   DEL. CODE ANN. tit. 19, § 1703.   At this

stage, Doe plausibly alleges an adverse employment action under this standard.   As discussed

above with respect to Doe's retaliation claims, there are allegations supporting the inference that

the County knew Kratzer was difficult to work with.   The transfer of Doe to work with a more

difficult co-worker may constitute "discriminat[ing] against an employee regarding the

employee's terms, conditions, . . . or privileges of employment."   Thus, I deny the motion to

dismiss Count X.

---

[4] This language is similar to the definition of "adverse employment action" in the context of Title
VII's antidiscrimination provision.   *See Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d
Cir. 2004) ("We have defined 'an adverse employment action' under Title VII as an action by an
employer that is 'serious and tangible enough to alter an employee's compensation, terms,
conditions, or privileges of employment.'" (citation omitted)).

E.      **Section 1983 Claims (Counts XI–XIV)**

Doe brings a substantive due process claim (Count XI) and an equal protection claim (Count XII) against Coates for his comments related to Doe's perceived sexual orientation.   Doe also asserts two substantive due process claims against Kratzer for his harassment relating to Doe's perceived sexual orientation (Count XIII) and his wife's race and national origin (Count XIV).

To state a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."   *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under the color of state law when the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"   *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997) (quoting *West*, 487 U.S. at 49).

"It is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state."   *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995).   "For instance, a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law."   *Bonenberger*, 132 F.3d at 24; *see also Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 541 (D. Del. 1996) ("[S]exual harassment of one state employee by her co-workers falls on the side of personal pursuits rather than acts under color of law.").

A defendant's sexual harassment, however, can be under color of state law where the defendant has supervisory control over the victim.   *Bonenberger*, 132 F.3d at 23–25 ("If a state

entity places an official in the position of supervising a lesser-ranking employee and empowers him or her to give orders which the subordinate may not disobey without fear of formal reprisal, that official wields sufficient authority to satisfy the color of law requirement of 42 U.S.C. § 1983.").   For example, in *Bonenberger*, a female police dispatcher brought a § 1983 sexual harassment claim against the police officer who regularly supervised her shift.   *Id.* at 22. Although the police officer had no power to fire the plaintiff, he could control her workload and could begin a disciplinary process if the plaintiff did not follow his orders.   *Id.* at 23–24.   The Third Circuit held that the police officer wielded sufficient supervisory authority over the plaintiff to satisfy the § 1983 color of law requirement.   *Id.* at 24–25.

Kratzer and Coates argue that Doe has failed to allege that they had supervisory control over Doe, and thus, Doe has failed to allege facts demonstrating that Kratzer and Coates were acting under the color of state law.   (D.I. 21 at 6–7).   The two relevant paragraphs of the Complaint provide: "Doe was assigned at one point to assist Herb Coates in the airport shop." (D.I. 3 at ¶ 19); and "Doe was transferred to work under Kratzer, a mechanic in DPW."   (*Id.* at ¶ 23).   These allegations alone are insufficient to support an inference that Coates and Kratzer had supervisory control over Doe.   Thus, I grant the motion to dismiss Counts XI–XIV without prejudice.[5]   *See Houlihan v. Sussex Tech. Sch. Dist.*, 461 F. Supp. 2d 252, 261–62 (D. Del. 2006) (granting motion to dismiss where the plaintiff failed to allege that the defendant "had any supervisor power over [the plaintiff's] daily activities").

---

[5]  Because I will grant the motion to dismiss Counts XI–XIV on these grounds, I need not address Kratzer and Coates' conclusory argument that they are entitled to qualified immunity. (D.I. 13 at 15–16).

**IV.    CONCLUSION**

An appropriate order will issue.

14